UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
BEVERLY GUSSOFF,

                              Plaintiff,                  **MEMORANDUM AND ORDER**
                                                                          13 CV 629 (DRH) (ARL)

     - against -

BJ'S WHOLESALE CLUB, INC. and BEACON
HOLDING INC.,

                              Defendants.
----------------------------------------------------------X

**APPEARANCES:**

**JULIEN & SCHLESINGER, P.C.**
Attorneys for Plaintiff
One Whitehall Street, 17th Floor
New York, NY 10004
By:    Michael S. Schlesinger, Esq.

**TORINO & BERNSTEIN, P.C.**
Attorneys for Defendants
200 Old Country Road, Suite 220
Mineola, NY 11501
By:    Bruce Anthony Torino, Esq.
         Ellie S. Konstantatos, Esq.
         Patricia Bruno Golden, Esq.

**HURLEY, Senior District Judge:**

        Beverly Gussoff ("plaintiff") commenced this action against BJ's Wholesale Club, Inc. ("BJ's") and Beacon Holding Inc. (collectively "defendants") alleging that defendants were negligent in "the operation, maintenance, management, inspection, control and supervision of the premises" of the BJ's located at 6000 Brush Hollow Road, Westbury, and "more specifically, the curb ramp leading from the handicap[ped] parking space to the walkway in front of the abovementioned premises." (Compl. ¶ 28.) Presently before the Court is defendants' motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56, seeking dismissal of

plaintiff's claims in their entirety.  For the reasons that follow, defendants' motion is denied.

## BACKGROUND

The following material facts, drawn from the parties' Local Civil Rule 56.1 Statements and evidentiary submissions, are undisputed unless otherwise noted.

On March 6, 2012, plaintiff, then 82 years old, and her son, Michael Gussoff ("Michael"), arrived at the BJ's Wholesale Club in Westbury, New York in the same vehicle.  Michael, who had been driving the vehicle, parked in a handicapped spot in front of the entrance to the BJ's. Plaintiff and her son had parked in the same or similar spot on several prior occasions.  Plaintiff exited the vehicle from the passenger side and walked towards the curb cut in front of the BJ's. According to Michael's testimony, when plaintiff exited the vehicle she stood approximately four feet from the handicapped ramp.  (Michael Gussoff's Dep. at 23.)  Plaintiff testified that as she walked up to the ramp, her "left foot caught on . . . the slope of the ramp," causing her to fall. (Pl.'s Dep. at 28-29.)  Additionally, she testified that there was nothing preventing her from seeing where she was walking as she approached the curb (*id*. at 38) and that she did not look down prior to falling.  (*Id*. at 28-29.)

## DISCUSSION

### I. *Summary Judgment Standard*

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law.  *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994).  The relevant governing law in each case determines which facts are material; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly

preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Del. & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)), and cannot rely on the allegations in his or her pleadings, on conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible," *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citations omitted). "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The district court, in considering a summary judgment motion, must also be mindful of the underlying burdens of proof because "the evidentiary burdens that the respective parties will

bear at trial guide district courts in their determination of summary judgment motions." *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, "the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the" non-movant's claim. *Id.* at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to present sufficient evidence in support of his claim, the burden shifts to the non-movant to offer "persuasive evidence that his claim is not 'implausible.'" *Id.* at 211 (citing *Matsushita*, 475 U.S. at 587).

## II.     *Defendant's Motion for Summary Judgment*

"In order to demonstrate negligence in New York, a plaintiff must plead and prove that (1) defendant owed a duty to plaintiff; (2) defendant breached that duty; (3) the breach of that duty was the actual and proximate cause of the plaintiff's injuries." *Wurtzel v. Starbucks Coffee Co.*, 257 F. Supp. 2d 520, 526 (E.D.N.Y. 2003) (citing *Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 215 (2d Cir. 2002)). A landowner's duty to a person upon his premises is that of "reasonable care under the circumstances." *Basso v. Miller*, 40 N.Y.2d 233, 241 (1976). Moreover, "[t]o impose liability upon the defendants for the plaintiff's fall, there must be evidence tending to show the existence of a dangerous or defective condition and that the defendants either created the condition or had actual or constructive notice of it and failed to remedy it within a reasonable time." *Drago v. DeLuccio*, 79 A.D.3d 966, 966 (2d Dep't 2010). "However, a landowner has no duty to protect or warn against conditions that are not inherently dangerous and that are readily observable by the reasonable use of one's senses." *Groon v. Herricks Union Free School Dist.*, 42 A.D.3d 431, 432 (2d Dep't 2007). In other words, "[i]f a hazard or dangerous condition is open and obvious, the owner of the property has no duty to *warn* a visitor of the

4

danger." *Westbrook v. WR Activities-Cabrera Mkts.*, 5 A.D.3d 69, 71 (1st Dep't 2004). Moreover, "the question of whether a condition is open and obvious is generally a jury question." *Id*.

At the outset, the Court must analyze whether the defendants have presented sufficient evidence of a prima facie entitlement to summary judgment. Based on photographs taken of the scene of the incident depicting the curb ramp and plaintiff's testimony that there was nothing that prevented her from seeing where she was walking as she approached the curb, defendants argue that "there was no condition or defect in the area whereat plaintiff's incident occurred." (Defs.' Mem. in Supp. at 1.) Moreover, defendants claim that this evidence demonstrates that the curb ramp was "open and obvious, and not inherently dangerous as a matter of law." (*Id*. at 14.) Furthermore, defendants note that plaintiff testified that she did not "look down prior to falling" (Pl.'s Dep. at 28) and that plaintiff's failure to look was the proximate cause of the accident for "[h]ad plaintiff looked where she had been walking, she would have observed that which was clearly visible, to wit, the curb ramp over which she claims to have tripped and fallen." (Defs.' Mem. in Supp. at 10.) Through this evidence, defendants have established their prima facie entitlement to summary judgment.

The burden then shifts to plaintiff to present a genuine question of material fact as to defendants' liability. Plaintiff contends that the slope of the curb ramp was "a dangerous defective condition on defendants' premises caused plaintiff to fall" and that "defendants were negligent in their failure to visually highlight or warn pedestrians of the steeply sloped change in walking level." (Pl.'s Mem. in Opp'n at 8,14.) Plaintiff's position rests heavily upon the expert testimony of Richard Berkenfeld, whose report is attached to her submission as plaintiff's Exhibit D ("Berkenfeld Report"). Berkenfeld visited the site of the accident and measured "[t]he slope of

the curb adjacent to the handicap[ped] curb ramp [to be] 30.3%." (Berkenfeld Report at 3.) Berkenfeld also stated that his "perusal of the State of New York Official Compilation of Codes, Rules and Regulations dated January 1, 1995 that was in effect when the premises was constructed [in 1999] revealed in Chapter 1 entitled 'State Uniform Fire Prevention and Building Code' in Sub-Chapter B entitled 'Building Construction' " the requirement that "[a]ll buildings, structures, facilities, elements and sites shall be accessible to persons with disabilities, in conformity with Reference Standard RS 72." (*Id*. at 4.) Subchapter 6 of that Chapter provides that "RS 72 was issued by [the Council of American Building Officials ("CABO") and the American National Standard Institute ("ANSI")] and is entitled 'Accessible and Usable Buildings and Facilities' CABO/ANSI A117.1-1992." (*Id*. at 4-5.) Furthermore, CABO/ANSI A117.1-1992 provides that "[c]urb ramps located where pedestrians must walk across the ramp shall have FLARED SIDES. Slopes of flares shall not be steeper than 1:10 (10%)." (*Id*. at 6.) As a result, Berkenfeld concluded that the 30% slope of the curb ramp violated the Uniform Fire Prevention and Building Code that was in effect when the premises was constructed, thereby creating a dangerous condition. (*Id*. at 6-7.) According to Berkenfeld, the "steep sloping curb which is three times as steep as what is permitted is the apparent direct cause of the accident." (*Id*. at 8.) Additionally, Berkenfeld concluded that "[t]he dangerous and hazardous condition was without any yellow warning paint at the time of the accident and, therefore, could be considered a hidden hazard." (*Id*.) Furthermore, Berkenfeld found that "if the curb had been painted yellow, as depicted in the photographs taken about (6) months after the accident,[1] the walkway slope at the side of the ramp would . . . have been more evident." (Pl.'s Mem. in Opp'n at 15.)

---

[1] Berkenfeld reviewed photographs of the scene of plaintiff's fall taken approximately six months after the incident. In those photographs the curb ramp is painted yellow. However,

Berkenfeld's finding that the slope's steepness violated New York's building code is evidence of defendants' negligence[2] and presents a genuine issue of fact as to whether a dangerous condition existed.[3] *See Elliott v. City of New York*, 95 N.Y.2d 730, 734 (2001) (violation of New York City Building Code was evidence of negligence). Furthermore, Berkenfeld's finding that the curb ramp was without any yellow warning paint at the time of the accident and, therefore, could be considered a "hidden hazard" creates an issue of fact as to whether the steepness of the slope was open and obvious such that it "would *necessarily* be noticed by any careful observer, so as to make any warning superfluous." *Westbrook*, 5 A.D.3d at 71. Defendants, however, argue that Berkenfeld's report "makes speculatory and conclusory allegations regarding the allegedly improper slope of the subject curb ramp" and his "assertion of an unsafe slope as the proximate cause of plaintiff's accident." (Defs.' Mem. in Supp. at 16.) Moreover, defendants claim that plaintiff has not raised an issue of fact as to the proximate cause element of her claim because "irrespective of Mr. Berkenfeld's contentions that the subject slope was too steep, the plaintiff's foot would have nonetheless made contact with the vertical face of the sidewalk at any slope as she failed to observe the rising slope of the curb ramp." (*Id*.) Based on Berkenfeld's report, however, reasonable minds could differ as to whether defendants' failure to provide yellow warning paint at the base of the curb would have prevented plaintiff's accident by making the curb ramp noticeable to plaintiff. As plaintiff argues, the "steep and unmarked slope

---

Berkenfeld also reviewed photos taken by Michael Gussoff shortly after plaintiff's accident which show that the curb was not painted yellow at that time. Thus, Berkenfeld concludes that BJ's added the yellow paint after plaintiff's accident. (Berkenfeld Report at 2.)

[2] Plaintiff posits that the building code violation "amounts to negligence per se," but the Court need not address the verity of that statement at this stage.

[3] Defendants do not make any specific argument challenging whether they created or had notice of the curb ramp.

7

at the edge of the handicap[ped] access ramp was a hidden hazard that would have and could have been avoided if the ramp . . . had been marked through application of noticeable yellow paint which would be a noticeable visual clue as plaintiff walked from the parking lot to the curb." (Pl.'s Mem. in Opp'n at 16.)   Therefore, her claim survives summary judgment.

## *CONCLUSION*

For the reasons set forth above, the defendant's motion for summary judgment is denied.

**SO ORDERED.**

Dated: Central Islip, New York
January 16, 2014

　　　　　　　　　　　　　　　　　　　　　　　　/s/
Denis R. Hurley
Unites States District Judge